UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**ENTER**

OCT 1 4 2011

JACK B. SCHMETTERER, BANKRUPTCY JUDGE
UNITED STATES BANKRUPTCY COURT

| | |
|---|---|
| IN THE MATTER OF: | ) |
| | ) |
| MAXWELL KOFI FREMPONG, | ) Bankruptcy No. 10 B 19967 |
| Debtor, | ) |
| | ) |
| SHERRI A. TAYLOR-KENNEDY and | ) |
| JOHN KENNEDY, et al., | ) Adversary No. 10 A 01773 |
| Plaintiff | ) |
| v. | ) |
| MAXWELL KOFI FREMPONG, | ) |
| Defendant | ) |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Maxwell Frempong ("Frempong" or "Landlord") filed a voluntary petition under Chapter 7 of the Bankruptcy Code. Sherri Taylor Kennedy and John Kennedy("Plaintiffs" or "Tenants") filed the above entitled adversary proceeding in the bankruptcy court seeking to exclude the debt owed to them from Frempong's general bankruptcy discharge.

The Adversary Complaint seeks a determination that the judgment for $6300 in favor of Plaintiffs entered in Circuit Court of Cook County Case No. 08 M1 152037 is not dischargeable under 11 U.S.C. § 523(a)(4).  Plaintiffs' Complaint in that case sought damages under the City of Chicago Residential Landlord and Tenant Ordinance ("CRLTO") Section 5-12-080.  Their state court Complaint alleged that Frempong was the Plaintiffs' landlord and that he mishandled their security deposit in violation of the CRLTO in three ways: (1) failed to properly deposit and hold it, (2) failure to pay interest on it, and (3) failure to return it or provide a proper accounting of it. Following trial, the following Findings of Fact and Conclusions of Law are now made and entered.

## JURISDICTION

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334(a) and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. The question of dischargeability of a debt is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## FINDINGS OF FACT

1.　　Maxwell Frempong ("Frempong") and Sherri Taylor Kennedy entered into a written Residential Lease Agreement dated October 1, 2006, for the period commencing October 1, 2006 through October 1, 2007 for the premises known as 6446 S. Greenwood in Chicago ("Subject Property").

2.　　The Subject Property was a non-owner-occupied property, and therefore subject to the terms and conditions of the Chicago Residential Landlord Tenant Ordinance. (Municipal Code Title 5 Chapter 12) ("CRLTO").

3.　　Frempong was a "landlord" under the terms of the CRLTO and subject to the obligations imposed therein.

4.　　The terms of the lease included monthly rent of $1,300.00 and a security deposit of $1,600.00.

5.　　The security deposit of $1,600.00 was paid by Plaintiffs to Defendant on or about September 19, 2006, for which Frempong issued a receipt to Sherri Taylor Kennedy and John Kennedy, her husband.

6.　　Frempong filed a forcible entry and detainer action against the Kennedys on August 1, 2007, seeking possession of the subject premises and money damages.

- 2 -

7.      The Kennedys vacated the subject premises on September 13, 2007, pursuant to the terms of an Order of Possession obtained by Frempong from the Circuit Court of Cook County on August 23, 2007.

8.      The Order of Possession included an award of money damages of $3,900 plus costs.

9.      On September 28, 2007, Frempong caused to be issued a Citation to Discover Assets (Wages) to Sherri Taylor-Kennedy's employer, University of Chicago Hospital, claiming there was due a sum of $8,508 after all credits and set-offs.

10. A wage deduction order was entered for $8,508 on October 19, 2007.

11. Upon      the Kennedys' motion, an order was entered reducing the Wage Deduction Order to $3,900 plus $440 in allowed court costs.

12.      On January 4, 2008, the Kennedys sent a letter to Frempong demanding the return of their security deposit.

13. On      January 8, 2008, Frempong sent to the Kennedys an itemization of asserted deductions from their deposit as follows: $700.00 for "repairs" on 12/16/06, $435.00 for "pro-rated rent" for the period 9/1/07-9/14/07, and $990 for TRASH REMOVEL" [sic] for a total of "$2125," and giving a credit of $1,600 for the security deposit, leaving a stated balance claimed of $525.

14. Frempong      did not pay interest on the tenants' security deposit or provide any credit for interest.

15.      Frempong did not place the Kennedys' security deposit in an interest-bearing account separate from his other assets.

16. Frempong      did not supply or attempt to supply the Kennedys any itemization of deductions from their deposit within 30 days of September 13, 2007, when they were put out of the premises.

## CONCLUSIONS OF LAW

**A.      A violation of section 5-12-080 of the CRLTO constitutes Defalcation
under Section 523(a)(4), making the entire debt nondischargeable**

Section 523(a)(4) of the Bankruptcy Code provides that a debtor cannot discharge any debt

"for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]" 11 U.S.C.

§ 523(a)(4). In order for the Plaintiffs to prevail under § 523(a)(4), they must first prove that the

Debtor committed fraud or defalcation while acting as a fiduciary. The meaning of those terms is

a question of federal law. *In re McGee*, 353 F.3d 537, 540 (7th Cir. 2003).

Chicago Municipal Code § 5-12-080(a) provides in relevant part as follows:

> A landlord shall hold all security deposits... in a federally insured interest-bearing account
> in a bank, savings and loan association or other financial institution.... A security deposit
> and interest due thereon shall continue to be the property of the tenant making such deposit,
> shall not be commingled with the assets of the landlord, and shall not be subject to the
> claims of any creditor of the landlord or of the landlord's successors in interest, including
> a foreclosing mortgagee or trustee in bankruptcy. Chicago Municipal Code § 5-12-080(a)
> (amended November 6, 1991).

A panel of the Seventh Circuit has held that the economic relation created by Chicago

Municipal Code § 5-12-080(a) is more clearly a "fiduciary" one than is the management

of a client's funds by a lawyer. *See In re McGee, 353 F.3d 537, 540 (7th Cir. 2003).* The Chicago

Municipal Code creates a trust-like relation between landlord and tenant, the sort of relation that

federal law labels "fiduciary." *Id.* Segregation of funds, management by financial intermediaries,

and recognition that the entity in control of the assets has at most "bare" legal title to them, are

hallmarks of the trust. *Id. at 541-44*. These real attributes bring into play a fiduciary obligation and

therefore § 523(a)(4) may apply. *Id.*

Security Deposits are held "in trust" by the landlord, and thus are not part of the Bankruptcy

Estate of any landlord in a Bankruptcy filing. The landlord's use of the tenant's Security Deposit is

a "defalcation while acting in a fiduciary capacity" and is not a dischargeable debt. A landlord holds

- 4 -

the tenant's security deposit in trust, pursuant to standards under the CRLTO Ordinance, and therefore the landlord is a fiduciary of that trust. A landlord who spends the money has committed an act of "defalcation" and the debt (i.e. the security deposit and any damages) is not dischargeable in bankruptcy (see 11 U.S.C. § 523 (a)(4)). *In re McGee.* 353 F.3d 537, 540-41 (7th Cir. 2003). *Starr v. Gay,* 354 Ill. App. 3d 610, 613-614 (1st Dist. 2004) explained further:

> "Security deposit provisions like section 5-12-080(a) [of the CRLTO] are designed to keep tenant monies out the reach of creditors of landlords and prevent risks inherent in commingling, such as a landlord's intentional or inadvertent personal use of tenant funds contained in a commingled account.
>
> A security deposit has been defined as money a tenant deposits with a landlord as security for the tenant's full and faithful performance of the lease terms. Under the terms of a lease agreement, a security deposit remains the tenant's property which the landlord holds in "trust" for the tenant's benefit subject to the tenant fulfilling its obligations under the lease."

A security comprises money deposited by tenant with a landlord as security for the tenant's full and faithful performance of the lease terms. *Beal Banks, S.S.B. v. Airport Industrial Ltd. Partnership,* 74 Conn. App. at 463, 812 A.2d at 868 (2003). Under terms of a lease agreement, a security deposit remains the tenant's property which the landlord holds in "trust" for the tenant's benefit subject to the tenant fulfilling its obligations under the lease. *Beal Bank, S.S.B.,* 74 Conn. App. at 463, 812 A.2d at 868. Security deposit provisions like section 5-12-080(a) are designed to keep tenant monies out the reach of creditors of landlords and prevent risks inherent in commingling, such as a landlord's intentional or inadvertent personal use of tenant funds contained in a commingled account. See, e.g., Neihaus v. Maxwell, 54 Mass. App. Ct. 558, 561-62, 766 N.E.2d 556, 559 (2002).

Here, Plaintiffs' relationship with the debtor was the same as that in *McGee,* that is, one of landlord-tenant where the landlord required and accepted a security deposit held in a fiduciary relationship with respect to that deposit. The provisions of section 5-12-080 of the CRLTO governing security deposits do apply here and the only question is whether Frempong failed to

comply with any one of the provisions. If so, it would constitute a violation of the Ordinance and would trigger the penalties and attorney fees associated therewith. That is, such violation(s) would also constitute defalcation under federal bankruptcy law and the entire debt associated with the violation would not be discharged.

For reasons more fully discussed below, it is held that Debtor's actions constituted defalcation while acting in a fiduciary capacity and that damages to Plaintiffs were caused as a result of the Debtor's mishandling of the security deposit. Under law, proving a violation of *any one* of the following contentions would satisfy the Plaintiffs' burden of proof: 1) failure to properly hold the deposit, (2) failure to pay interest on it, or (3) failure to return it or provide a proper accounting of it.

**B.  Commingling**

Frempong claims that he was not required to deposit the Kennedys' security deposit in an interest bearing account or pay interest to the Plaintiffs because the property "does not contain 25 or more units." This contention has no merit. The CRLTO § 5-12-080(a) is generally applicable:

> 5- 12-080 Security Deposits
> (a) A landlord shall hold all security deposits received by him in a federally insured interest-bearing account in a bank, savings and loan association or other financial institution located in the State of Illinois. A security deposit and interest due thereon shall continue to be the property of the tenant making such deposit, shall not be commingled with the assets of the landlord, and shall not be subject to the claims of any creditor of the landlord or of the landlord's successors in interest, including a foreclosing mortgagee or trustee in bankruptcy.

Whether the commingling was inadvertent or not is irrelevant. *Plambeck v. Greystone Management & Columbia Nat. Trust Co.,* 281 Ill. App. 3d 260, 272, 666 N.E.2d 670, 677 (1st Dist. 1996). Neither is there any consideration to be given to whether there are any excuses for commingling or whether there was any actual harm. *Id.* In fact, cases interpreting the CRLTO have invariably ruled that there are no excuses to noncompliance with the terms of the Ordinance--that there are no "de minimis" exceptions or "no harm" exemptions, and no "inadvertence" allowances

or willfulness requirements. *See e.g Lawrence v. Regent Realty Group, Inc.,* 197 Ill.2d 1, 9-10, 754 N.E.2d 334 (2001) ("A landlord's duty to comply with the statute is absolute... There are no exceptions."; *Plambeck v. Greystone Management & Columbia Nat. Trust Co.,* 281 Ill. App. 3d 260, 272, 666 N.E.2d 670, 677 (1st Dist. 1996) (whether commingling was inadvertent or excused is not a consideration).

The security deposit is by definition the tenants' property and is held in trust by the landlord. The landlord stands in a fiduciary capacity in this regard. By failing to place and keep the Kennedys' security deposit in a separate account, or if the money was not deposited at all and was otherwise spent, this constituted a violation. Even if the Landlord later had a right to deduct monies from the deposit (if done in strict conformity with the CRLTO), such a fact is irrelevant because the violation had already occurred.

## C.    Payment of Interest

Section (c) of 5- 12-080 imposes a duty on the landlord to pay the tenant interest on any security deposit held for more than 6 months:

> (c) A landlord who holds a security deposit or prepaid rent pursuant to this section shall pay interest to the tenant accruing from the beginning date of the rental term specified in the rental agreement at the rate determined in accordance with Section 5-12-081. The landlord shall, within 30 days after the end of each 12-month rental period, pay to the tenant any interest, by cash or credit to be applied to the rent due. *(Amend. Council Journal* of Proceedings; November 6, 199 1, page 7203; Added. Council Journal of proceedings, May 14, 1997, page 4516).

There is an absolute duty to pay interest on security deposits, so that willfulness is not required. This decision was affirmed by the Illinois Supreme Court in *Lawrence* 197 Ill.2d 1, 754 N.E.2d 334 (2001). Nothing in section 5-12-080(f) requires proof that the landlord's actions were knowing or willful. "A landlord's duty to comply with the statute is absolute. If a landlord requires a security deposit, the landlord is required to pay the tenant interest on that deposit. If he fails to do

so, he is liable to the tenant for the damages specified in the ordinance. There are no exceptions."
*Id.* 197 Ill.2d at 1, 9, 10, 754 N.E.2d 334 (2001).

A court should not construe an ordinance in a manner that renders words or phrases superfluous or meaningless. *In re Application of the County Collector,* 132 ill.2d 64, 72, 547 N.E.2d 107 (1989). Where a statute is clear and unambiguous, as this one is, the court should not look to extrinsic aids for construction. *Board of Education of Rockford School District No. 205 v. Illinois Educational Labor Relations Board,* 165 Ill.2d 80, 87, 208 Ill. Dec. 313, 649 N.E.2d 369 (1995).

Here, there is no question that Frempong had possession of the deposit for more than six months. There is also no doubt that he failed to pay interest or even attempt to do so in any way. He did not pay interest by cash, or by credit applied to the rent owed, and failed to account for any accrued interest in his security deposit itemization. Thus, by the plain language of the Ordinance he violated this subsection of the CRLTO. As such, Plaintiffs are entitled to the penalties allowed under subsection (f).

**D.    Failure to Return Deposit, Improper Accounting, and Improper Deductions**

Section 5-12-080(d)(2) of the CRLTO allows a landlord to deduct from a tenant's security deposit "[a] reasonable amount necessary to repair any damage caused to the premises by the tenant," provided, however, that "[i]n case of such damage, the landlord shall deliver or mail * * * within 30 days an itemized statement of the damages allegedly caused to the premises." Chicago Municipal Code § 5-12-080(d)(2) (added May 14, 1997).

Thus, § 5-12-080(d) imposes additional duties on the landlord with respect to return of the deposit and enumerates allowable deductions thereto, as follows:

(d) The landlord shall, within 45 days after the date that the tenant vacates the dwelling unit or within 7 days after the date that the tenant provides notice of termination of the rental agreement pursuant to Section 5- 12- 110(g), return to the tenant the security deposit or any

- 8 -

balance thereof and the required interest thereon; provided, however, that the landlord may deduct from such security deposit or interest due thereon for the following:

(1) any unpaid rent which has not been validly withheld or deducted pursuant to state or federal law or local ordinance; and

(2) a reasonable amount necessary to repair any damage caused to the premises by the tenant or any person under the tenant's control or on the premises with the tenant's consent, reasonable wear and tear excluded. In case of such damage, the landlord shall deliver or mail to the last known address of the tenant within 30 days an itemized statement of the damages allegedly caused to the premises and the estimated or actual cost for repairing or replacing each item on that statement, attaching copies of the paid receipts for the repair or replacement. If estimated cost is given, the landlord shall furnish the tenant with copies of paid receipts or a certification of actual costs of repairs of damage if the work was performed by the landlord's employees within 30 days from the date the statement showing estimated cost was furnished to the tenant.

A statute must be enforced as written, and a court may not depart from its plain language by reading into it exceptions, limitations, or conditions not expressed by the legislature. *People v. Wright*, 194 Ill.2d 1, 29, 251 Ill. Dec. 469, 740 N.E.2d 755 (2000). Thus, this sub-section describes at least three provisions with which a landlord is required to comply: (a) the types of deductions allowable, (b) the method of properly making any deductions from the deposit, and (c) a maximum time period for compliance. All three must be observed.

### 1.   *When is a Unit "Vacated" under Sub-Section (d)?*

A tenant vacates when the tenant actually surrenders possession of the leasehold, and the 45-day window for return of the security deposit accrues at that time. *Meyer v. Cohen,* 260 Ill. App. 2d 351, 361; 632 N.E.2d 22, 28 (1st Dist. 1993).

Thus, under the CRLTO, Frempong was obligated to return the deposit within 45 days from the date the Kennedys vacated the subject premises, unless within 30 days after the premises was vacated he provide an itemization of the damages claimed to be deducted from the deposit.

Frempong violated this section of the CRLTO in several ways, each of which is sufficient to find an actionable violation with the accompanying penalties.

The deductions were improper. First, no receipts for alleged expenses were attached to the itemization. Second, the itemization, even if proper was sent well outside the time frame required by the CRLTO. The Kennedys vacated on September 13, 2007. Frempong was obligated to send an itemization plus receipts within the 30 days period, by October 13, 2007.

Defendant suggests that he had a right to retain the deposit for rent owed. That contention is not supported by the facts of this case. Firstly, Frempong's own itemization did not claim he was deducting from the deposit rent found due under the judgment. The itemization did claim additional rent for a prorated period after his eviction case was filed. However, the tenant would not be liable for rent in that period. As the landlord, Frempong elected to terminate the lease and file an eviction action. A forcible entry and detainer proceeding terminates a lease and simultaneously terminates a tenant's obligations under the lease (*Broniewicz v. Wysocki* (1940), 306 Ill. App. 187, 28 N.E.2d 283). Consequently, a landlord has no right to retain plaintiff's security deposit *Munroe v. Brower Realty & Management Co.* 206 Ill. App.3d 699, 704, 565 N.E.2d 32, 35 1 Dist.,1990. When plaintiffs failed to pay rent, defendant successfully brought a forcible entry and detainer proceeding against them and recovered judgment for the amount of rent owed by plaintiffs. The landlord thereby made an election of remedies to terminate the lease. He could not thereafter justify a refusal to return a security deposit on the ground that rent remained owing under the lease for a period that followed lease termination.

Frempong obtained a judgment for rent owed of $3,900. Frempong was not entitled to deduct $435 for rent from the security deposit for the period after he had terminated the tenancy. He was not allowed afterwards to then add additional amounts over and above the judgment. Indeed, Frempong elected to satisfy the entire judgment through a wage garnishment proceeding. The record shows that in his Citation to Discover Assets to the third party employer of Sherri Taylor-Kennedy,

he contended that his $3,900 judgment had somehow been transformed into $8,508.00. Upon the

Kennedys' motion, the state court judge reduced the garnishment to the correct amount of the

judgment, $3,900, plus costs. For this reason as well, Frempong was not entitled to withhold rent

from the deposit, as a sort of "double-dipping" windfall.

### E.    Penalties

The CRLTO § 5-12-080(f) provides for penalties for *any* failure to comply with *any* of the

provisions of 5-12-080(a) through (e):

> (f) If the landlord or landlord's agent fails to comply with any provision Section 5-12-080(a)-(e), the tenant shall be awarded damages in an amount equal to two times  the security deposit plus interest at, at rate determined in accordance with Section 5-12-081. This subsection does not preclude the tenant from recovering other damages to which he may be entitled under this chapter. (Prior Code 193.1-8; Added.
> Coun. J. 9-8-86, p.33771; Corrected 9-12-86, p. 33919; Amend. 11-6-91, p. 7196)

A single award is proper for multiple violations of § 05-12-080. *Krawczyk v. Livaditis*, 366 Ill. App.

3D 375; 851 N.E.2d 862 (1st Dist. 2006). Therefore, only one penalty of two-times the deposit is

awarded even if more than one subsection is violated. However, return of the deposit is in addition

to the penalty, if a violation of subsection (d) is found to have been committed.

Likewise, the CRLTO requires that attorney fees be awarded for any violation:

### § 05-12-180, Attorney's Fees
Except in cases of forcible entry and detainer actions, the prevailing plaintiff in any action arising out of a landlord's or tenant's application of the rights or remedies made available in this ordinance shall be entitled to all court costs and reasonable attorney's fees; provided, however, that nothing herein shall be deemed or interpreted as precluding the awarding of attorney's fees in forcible entry and detainer actions in accordance with applicable law or as expressly provided in this ordinance. (emphasis added).

### *1.    A Party is Entitled to an Appropriate Hearing on Attorneys' Fees*

This section provides for reasonable attorneys' fees to the prevailing plaintiff. That plaintiff

is entitled to an appropriate hearing to determine reasonable attorneys' fees. *Plambeck v. Greystone*

*Management*, 281 Ill. App. 3d 260, 273; 666 N.E2d 670, 677 (1st Dist. 1996). It is incumbent upon

the petition for fees to specify the services performed, by whom they were performed, the time expended and an hourly rate charged therefore. Petitioner must present records maintained during the litigation containing facts and computations upon which the charges are predicated. *Id.*

### 2.   *Factors for Court to Consider in Awarding Attorney's Fees*

In assessing the reasonableness of attorneys' fees, the trial court should consider a variety of factors, including the skill and standing of the attorney employed, the nature of the case, the novelty and difficulty of the issues involved, the degree of responsibility required, the usual and customary charge for the same of similar services in the community, and whether there is a reasonable connection between the fees charged and the litigation and results achieved. The trial judge is permitted to use its own knowledge and experience to assess the time required to complete particular activities. *Plambeck v. Greystone Management,* 281 Ill. App. 3d 260, 273; 666 N.E2d 670, 677–8 (1st Dist. 1996).

A party can be considered a "prevailing party" for the purposes of awarding attorneys fees when it is successful on any significant issue in the action and achieves some benefit in the action. *Id.*

### 3.   *The Entire State Court Judgment is Non-dischargeable*

In *Cohen v. De la Cruz* the Supreme Court started from the premise that when a debt is found to be nondischargeable under 11 U.S.C. §§ 523(a)(1)(B)(i), 523(a)(4), 523(a)(6) and 523(a)(9), the entire amount of the debt is excluded from the discharge. When the Court ruled that § 523(a)(2)(A) should be treated the same as those debts, it necessarily followed that the entire debt, including the treble (punitive) damages, was not discharged. *Cohen v. De la Cruz,* 523 U.S. 213 (1998).

## IV.   Decisions

### 1.   *Commingling*

Frempong's contention that he was not obligated to place the security deposit in a segregated account is without merit. The tenant should be awarded damages in an amount equal to two times the security deposit plus interest at a rate determined in accordance with Section 5-12-080, plus attorney fees.

### 2.   *Return of Deposit*

Plaintiffs vacated the premises in or about September 13, 2007. Section 5-12-080 (d) of the RLTO required that landlord return tenants' entire security deposit with interest within 45 days of the date tenants vacate the premises. Within 30 days of the date the tenants vacated the premises, the landlord was required to provide written explanation and receipts for any repair costs or unpaid rent that were to be deducted from the security deposit. Frempong failed to do so. Defendant has failed to return any portion of the security deposit and have failed to provide Plaintiffs with the required detailed itemization of any damages, costs or deductions applied thereto, within the required time period, in violation of CRLTO section 5-12-080(d). The tenant should be awarded damages in an amount equal to two times the security deposit plus interest at a rate determined in accordance with Section 5-12-080, plus attorney fees.

### 3.   *Failure to Pay interest*

Landlord received $1,600.00 security deposit on or about September 19. 2006. A landlord who holds a security deposit or prepaid rent pursuant to this section for more than six months is obligated to pay the tenant interest on the deposit. Landlord failed to pay Tenants any interest on said deposit at any time. The penalty for failing to comply with this section is two months rent plus costs and attorney fees.

A single penalty of two times the deposit is proper for multiple violations of § 05-12-080. In addition the tenant's security deposit must be returned. Total award to be entered in favor of Plaintiffs against defendant will be in the amount of $4,800 (2 x $1600 + $1600) plus interest due on the deposit, taxable costs, and reasonable attorney fees to be determined by Petition.

The entire amount of the debt is not dischargeable.

## CONCLUSION

Pursuant to the foregoing Findings of Fact and Conclusions of Law, the Judgment entered by the state court will be declared non-dischargeable under 11 U.S.C. § 523(a)(4). Ruling as to attorneys' fees and issues as to billable costs, to the extent not already allowed in the state court judgment may be determined by the state court, and when determined will also be non-dischargeable under 11 U.S.C. § 523(a)(4). Therefore hearing on Plaintiffs' application for fees filed herein will be adjourned.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this 14th day of October, 2011.
G:\Opinions and Orders\Miscellaneous Cases\F-J\FrempoongMaxwell.F&C.wpd

- 14 -